[No. B209913. Second Dist., Div. Three. June 17, 2009.]

HAROLD P. STURGEON, Plaintiff and Appellant, v.
WILLIAM J. BRATTON et al., Defendants and Respondents;
BREAK THE CYCLE et al., Interveners and Respondents.

COUNSEL

Judicial Watch, Inc., and Sterling E. Norris for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, and Paul L. Winnemore, Deputy City Attorney, for Defendants and Respondents.

ACLU Foundation of Southern California, Hector O. Villagra, Belinda Escobosa Helzer, Mark Rosenbaum and Ahilan Arulanantham for Interveners and Respondents.

## OPINION

**CROSKEY, J.**—Special order 40 (SO40) is the policy of the Los Angeles Police Department (LAPD) governing interactions with illegal immigrants. It prohibits LAPD officers from initiating police action with the *sole* objective of discovering the immigration status of an individual and arresting individuals for illegal entry into the United States. In 1987, this court upheld SO40 against a challenge that the mere questioning of a criminal arrestee about his immigration status, and passing that information on to federal immigration

officials—acts permitted by SO40—constituted unconstitutional state enforcement of federal civil immigration law. (*Gates v. Superior Court* (1987) 193 Cal.App.3d 205, 219 [238 Cal.Rptr. 592].) We concluded that the LAPD could *voluntarily transfer legitimately obtained arrest information* to federal authorities without running afoul of the United States Constitution. (193 Cal.App.3d at p. 219.)

Subsequently, Congress enacted a statute invalidating state and local restrictions on the voluntary exchange of immigration information with federal immigration authorities. (8 U.S.C. § 1373 (section 1373).) Plaintiff Harold P. Sturgeon brought a taxpayer action to enjoin defendants, LAPD Chief William J. Bratton and other officials,[1] from enforcing SO40, as a local restriction invalidated by section 1373. The trial court permitted intervention, in support of defendants, by several organizations supporting immigrants' rights.[2] Interveners and defendants moved for summary judgment on the basis that SO40 was not invalid. Sturgeon took the position that SO40 violated the supremacy clause (U.S. Const., art. VI, cl. 2) because it conflicted with section 1373. Alternatively, Sturgeon argued that SO40 was preempted by federal immigration law. Finally, Sturgeon argued that SO40 violated Penal Code section 834b, a California statute requiring local law enforcement agencies to cooperate with federal immigration authorities, and specifying certain immigration enforcement tasks which must be taken with respect to every arrestee suspected of being present in the United States illegally.

The trial court granted summary judgment, upholding the validity of SO40. As to Sturgeon's contention that SO40 violated the supremacy clause, the trial court concluded that Sturgeon's challenge was solely a facial challenge, not an as-applied challenge, and that Sturgeon had failed to establish that SO40 was facially invalid under all circumstances. As to Sturgeon's preemption argument, the trial court concluded SO40 is not preempted by federal immigration authority. Finally, as to Sturgeon's argument that SO40 violated Penal Code section 834b, the trial court concluded that Penal Code section 834b was itself preempted by federal law. The trial court therefore granted summary judgment in favor of defendants and interveners. Sturgeon appeals. We agree with the trial court's analysis in all respects, and therefore affirm.

---

[1] The other defendants are president of the board of police commissioners, John Mack, and members of the board of police commissioners, Shelley Freeman, Alan J. Skobin, Andrea Ordin and Anthony Pacheco.

[2] Interveners are Break the Cycle, Los Jornaleros, El Comite de Jornaleros and Instituto de Educacion Popular del Sur de California.

## FACTUAL AND PROCEDURAL BACKGROUND

A brief review of the relationship between federal and local authorities with respect to the enforcement of immigration law is helpful to place into context the adoption of SO40. While improper entry into the United States is a misdemeanor (8 U.S.C. § 1325(a)), an alien illegally in the country may also be subject to removal proceedings before an immigration judge (8 U.S.C. § 1229a). Only the former constitutes a criminal proceeding.

The federal government has the exclusive authority to enforce the civil provisions of federal immigration law relating to issues such as admission, exclusion and deportation of aliens. (*Gates v. Superior Court, supra,* 193 Cal.App.3d at pp. 214–215.) As such, Congress is prohibited by the Tenth Amendment from passing laws requiring states to administer civil immigration law. (*City of New York v. U.S.* (2d Cir. 1999) 179 F.3d 29, 33–35.)

Under federal law, matters of immigration are handled by U.S. Immigration and Customs Enforcement (ICE), a branch of the Department of Homeland Security.[3] (*Fonseca v. Fong* (2008) 167 Cal.App.4th 922, 927 [84 Cal.Rptr.3d 567].) Authorized ICE officers have powers to enforce federal immigration laws which exceed the powers of state law enforcement officers.[4] Under 8 United States Code section 1357(g), the Attorney General of the United States may enter into a written agreement with a state or political subdivision pursuant to which state or local officers may carry out the function of immigration officers, but this requires a voluntary agreement, and the local officer would be subject to the supervision of the United States Attorney General when performing the functions of an ICE officer. (8 U.S.C. § 1357(g)(3).) Similarly, the United States Attorney General may authorize local law enforcement officers to perform as ICE officers when a mass influx of aliens requires an immediate response; even then, the Attorney General must act "with the consent of the head of the department, agency, or establishment under whose jurisdiction the individual is serving." (8 U.S.C. § 1103(a)(10).)

While the Tenth Amendment shields state and local governments from the federal government requiring them to administer federal civil immigration

---

[3] Previously, these matters were handled by the Immigration and Naturalization Service (INS) and there is no dispute that statutory or case law references to the INS are to be read to refer to the ICE.

[4] For example, ICE officers may, without a warrant: interrogate any alien or person believed to be an alien as to his right to be in the United States (8 U.S.C. § 1357(a)(1)); arrest any alien believed to be in the United States illegally and likely to escape before a warrant can be obtained (8 U.S.C. § 1357(a)(2)); and board and search vessels within a reasonable distance of the border to search for aliens (8 U.S.C. § 1357(a)(3)).

law, local police are not precluded from enforcing federal criminal statutes. (*Gates v. Superior Court, supra,* 193 Cal.App.3d at p. 215.) Thus, in theory, local police could arrest for misdemeanor improper entry into the United States. However, in California, a police officer may arrest for a misdemeanor only when that offense is committed in the officer's presence. (Pen. Code, § 836, subd. (a).) As the misdemeanor offense of improper entry into the United States is complete upon the improper entry itself, no California police officer can arrest for misdemeanor illegal entry once the alien has reached a place of repose. (*Gates v. Superior Court, supra,* 193 Cal.App.3d at pp. 215–216.) As it is extremely unlikely that an LAPD officer would make contact with an illegal alien during the course of that individual's illegal entry into the United States, LAPD officers generally cannot arrest aliens for illegal entry into the United States.

As LAPD officers can neither commence deportation proceedings nor arrest aliens for improper entry, they are powerless to take direct action against an individual they believe to be in this country illegally. However, LAPD officers may, " 'as a matter of comity and good citizenship,' " *voluntarily* report such individuals to ICE, and it does not constitute improper local enforcement of civil immigration law for them to do so. (*Gates v. Superior Court, supra,* 193 Cal.App.3d at p. 219.) Many local police agencies, including the LAPD, believe that local law enforcement can best achieve its goal of crime prevention by making it known to the community that local law enforcement officers are unconcerned with immigration violations—thereby encouraging illegal immigrants to come forward with relevant information about crimes without fear of deportation. Thus, while local police officers are permitted under federal law to voluntarily report suspected illegal aliens to ICE, some local entities have chosen to restrict such reporting. (See *City of New York v. U.S., supra,* 179 F.3d at pp. 31–32 [considering a mayor's executive order prohibiting city officers from transmitting information regarding immigration status to federal authorities except under specified circumstances].) The LAPD did not do so. Instead, it chose to impose limits on its officers' ability to investigate the immigration status of aliens with whom they come into contact.

SO40 was promulgated by then Chief of Police Daryl Gates on November 27, 1979. Special orders are directives issued by the chief of police which amend the LAPD Manual. Although the parties, and, apparently, members of the community, continue to refer to the LAPD's policy regarding illegal immigrants as "SO40," the relevant provision is in the LAPD Manual with a different section number. Volume IV, section 264.50 of the LAPD Manual provides, "ENFORCEMENT OF UNITED STATES IMMIGRATION LAWS. Officers shall not initiate police action where the objective is to discover the alien status of a person. Officers shall neither arrest nor book persons for violation of Title 8, Section 1325 of the United States Immigration Code

(Illegal Entry)."[5] Stated broadly, SO40 prevents LAPD officers from commencing investigations directed solely toward uncovering violations of civil immigration laws and from arresting for an immigration misdemeanor which is not committed within their presence.

Sturgeon's challenge to SO40 is based entirely on a federal statute enacted some 17 years after SO40. In 1996, Congress enacted a statute to protect the voluntary exchange of information with ICE. Section 1373 provides, "Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [ICE] information regarding the citizenship or immigration status, lawful or unlawful, of any individual."[6] (§ 1373(a).) The statute also provides that no person or agency may prohibit or restrict a local entity from (1) sending such information to, or requesting and receiving such information from, ICE; (2) maintaining such information; or (3) exchanging such information with any other government entity. (§ 1373(b).) Finally, the statute requires ICE to respond to any inquiry by a federal, state, or local government agency "seeking to verify or ascertain the citizenship or immigration status of any

---

[5] Volume IV of the LAPD Manual sets forth "Line Procedures," which are "detailed rules and procedures to aid Department employees in the execution of line duties performed in the direct furtherance of police objectives." (LAPD Manual, vol. 0, § 010.) Volume I of the LAPD Manual sets forth "Policy," which is "not a statement of what must be done in a particular situation; rather, it is a statement of guiding principles which should be followed in activities which are directed toward the attainment of Department objectives." (LAPD Manual, vol. I, § 010.) The LAPD's "Policy" regarding undocumented aliens is set forth at volume I, section 390. It provides, "Undocumented alien status in itself is not a matter for police action. It is, therefore, incumbent upon all employees of this Department to make a personal commitment to equal enforcement of the law and service to the public regardless of alien status. In addition, the Department will provide special assistance to persons, groups, communities and businesses who, by the nature of the crimes being committed upon them, require individualized services. Since undocumented aliens, because of their status, are often more vulnerable to victimization, crime prevention assistance will be offered to assist them in safeguarding their property and to lessen their potential to be crime victims. [¶] Police service will be readily available to all persons, including the undocumented alien, to ensure a safe and tranquil environment. Participation and involvement of the undocumented alien community in police activities will increase the Department's ability to protect and to serve the entire community." Sturgeon brings no challenge to this "Policy." Additionally, there are sections of the LAPD Manual providing that, when an arrestee is booked, the arrestee's birthplace must be noted, with a particular notation made if the arrestee is foreign-born (LAPD Manual, vol. IV, § 604.41) and the placement and disposition of ICE holds (LAPD Manual, vol. IV, § 675.35). There is no argument that these practices are in any way inadequate under the law.

[6] Sturgeon also relies on title 8 United States Code section 1644, which prevents prohibitions or restrictions on the communication between any "State or local government *entity*" and ICE (italics added). As we are here concerned with the communication between police *officers* and ICE, it is clear that section 1373, not section 1644, is the relevant statute.

individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."[7] (§ 1373(c).)

On May 1, 2006, Sturgeon brought this action against defendants. Sturgeon had not been personally impacted by the application of SO40; instead, he brought a so-called "taxpayer" action to enjoin the enforcement of SO40 as an illegal expenditure of public funds. (Code Civ. Proc., § 526a.) Defendants' demurrer was overruled, and the interveners were permitted to join the action on behalf of defendants.

Substantial discovery was conducted. The majority of Sturgeon's discovery consisted of depositions of current and past high-ranking LAPD officers, in order to obtain their opinions on the scope of SO40 and the particular police conduct it prohibits and permits. Sturgeon did not obtain any information regarding any specific instance of the application of SO40. When asked, by special interrogatory, to identify all individuals "who have been prohibited by [SO40] from sending to immigration officials information regarding the immigration status of an individual," Sturgeon objected to the request as "inappropriate to the type of lawsuit brought by Plaintiff, which is a legal challenge to a longstanding policy of the [LAPD], and not reasonably calculated to lead to the discovery of admissible evidence." The same response was given to interrogatories asking for the identity of individuals prohibited by SO40 from receiving information from immigration officials, maintaining immigration information, and exchanging immigration information with any law enforcement agency. Indeed, Sturgeon gave the same response to an interrogatory seeking the identity of law enforcement officers who have complained about the prohibitions or restrictions of SO40.

Thereafter, both defendants and interveners moved for summary judgment. They argued that (1) Sturgeon brought only a facial challenge to SO40, not an as-applied challenge; (2) SO40 was not facially invalid as it did not violate section 1373 in all circumstances; (3) SO40 was similarly not preempted by federal law; and (4) there can be no conflict with Penal Code section 834b, as that statute had been determined to be preempted by federal immigration law. With respect to the purported conflict with section 1373, defendants and interveners took the position that SO40, on its face, says nothing regarding prohibiting communication with ICE, but only prohibits officers from initiating police action regarding immigration status. In contrast, defendants and

---

[7] We note that Congress is currently considering a comprehensive reform to the immigration law, which would include a repeal of section 1373, under the heading, "Preventing Inappropriate State and Local Government Involvement in the Enforcement of Civil Immigration Provisions Under the Immigration and Nationality Act." (H.R. No. 264, 111th Cong., 1st Sess., § 1402 (2009).)

interveners argued, section 1373, on its face, says nothing regarding local policies prohibiting the initiation of police action into immigration status, but only invalidates local policies prohibiting contact with ICE.

Sturgeon opposed summary judgment with deposition excerpts, reports,[8] and other evidence regarding the scope of SO40. Sturgeon argued that he was challenging not merely the language of SO40, but the broader way in which it had been applied. However, none of Sturgeon's evidence dealt with a particular application of SO40; instead, Sturgeon focused on the opinions of highly ranked LAPD officers regarding the meaning of SO40. While we do not disagree with Sturgeon that the proffered interpretations of SO40 were somewhat inconsistent, all of the LAPD witnesses agreed that SO40 prohibits arresting someone for misdemeanor illegal entry, and prohibits *initiating an investigation into an individual solely to determine that person's immigration status*. There was some disagreement among the LAPD witnesses regarding whether SO40 also prohibits investigating the immigration status of an individual already under investigation for something *unrelated* to immigration status.[9] Moreover, there was some disagreement regarding whether an LAPD officer who happened to discover information indicating that an individual not otherwise under arrest was present in the country illegally could contact ICE.[10] In response to a special interrogatory asking the circumstances under which SO40 prohibits inquiring of ICE regarding a person's immigration status, defendants responded "[SO40] prohibits LAPD from initiating police action with the objective of discovering the alien status of a person. If an individual were to contact [ICE] for that explicit purpose and for no other, they would be violating [SO40]."

---

[8] Sturgeon relies heavily on a February 2001 Report of the Rampart Independent Review Panel regarding SO40. Defendants had relied on this report in support of their demurrer, but when Sturgeon sought judicial notice of the report in opposition to the motion for summary judgment, the interveners (who had not been in the case at the time of defendants' demurrer) opposed the request. The trial court denied the request for judicial notice. Sturgeon does not contest this ruling in his opening brief, and simply relies on the Rampart report without mention of the trial court's ruling. While he argues, in his reply brief, that the Rampart report is relevant and admissible, we do not consider the argument due to his failure to raise it in his opening brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [60 Cal.Rptr.2d 770].)

[9] Commander Sergio Diaz, Deputy Chief Gary Brennan, Assistant Chief Earl Paysinger, Captain Mark Olvera and former Assistant Chief George Gascon all testified that SO40 is essentially a prohibition against initiating enforcement actions aimed at determining the alien status of a person, and does not prohibit inquiring regarding the alien status of someone otherwise under investigation. Only Deputy Chief Mark Perez stated that LAPD officers are prohibited from questioning *anyone* regarding their immigration status.

[10] Commander Diaz testified that SO40 does not prohibit any contact between the LAPD and ICE. Deputy Chief Brennan stated that it is inconsistent with department policy to contact ICE if unrelated to a criminal investigation. He noted that inquiring of ICE with respect to someone who is not otherwise under investigation is generally not done and would be a very rare occurrence. Former Assistant Chief Gascon had a similar interpretation, but noted that he did not believe the LAPD interpreted SO40 to be in violation of section 1373.

The disagreements among the witnesses as to the scope of SO40 are irrelevant, as Sturgeon argued that SO40's undisputed prohibition on initiating investigations for the sole purpose of determining immigration status was itself a violation of section 1373. Sturgeon argued that preventing officers from *obtaining information* regarding an individual's immigration status is a restriction on voluntarily reporting such information to ICE, because a restriction on *obtaining* information reduces the amount of information which can then be reported.[11] Additionally, Sturgeon argued that a triable issue of fact exists as to whether, in practice, SO40 is interpreted to prevent, at least in some cases, otherwise permissible voluntary contact with ICE, in violation of section 1373.

The trial court concluded that, as Sturgeon relied on no actual instances of the application of SO40, Sturgeon's challenge to SO40 was strictly facial. As such, the court denied all requests for judicial notice (and declined to rule on all evidentiary objections), as only the language of SO40 was relevant. Concluding that there was no total and fatal conflict with section 1373, the trial court held that SO40 survived Sturgeon's facial challenge. The court also concluded that SO40 is not otherwise preempted by federal law, and that since Penal Code section 834b is preempted, SO40's conflict with that statute is irrelevant. Summary judgment was granted. Judgment was entered in favor of defendants and interveners. Sturgeon filed a timely notice of appeal.

## ISSUES ON APPEAL

We first consider whether the trial court erred in determining that Sturgeon brought only a facial, not an as-applied, challenge to SO40; we conclude the trial court did not err. We next conclude that Sturgeon's facial challenge is insufficient to enjoin the enforcement of SO40, and SO40 is not otherwise preempted by federal immigration law. Finally, we agree that Penal Code section 834b is preempted, and thus cannot pose a challenge to the enforcement of SO40. We therefore will affirm the judgment.

## DISCUSSION

### 1. *Standard of Review*

" 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.' (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) The pleadings define the issues to be considered

---

[11] Sturgeon similarly argued that a restriction on arresting for misdemeanor illegal entry prevents the transmission of information regarding the arrest to ICE.

on a motion for summary judgment. (*Sadlier* v. *Superior Court* (1986) 184 Cal.App.3d 1050, 1055 [229 Cal.Rptr. 374].) As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish a defense. Only then will the burden shift to the plaintiff to demonstrate the existence of a triable, material issue of fact. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064–1065 [225 Cal.Rptr. 203].)" (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252 [38 Cal.Rptr.2d 65].) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) We review orders granting or denying a summary judgment motion de novo. (*FSR Brokerage, Inc.* v. *Superior Court* (1995) 35 Cal.App.4th 69, 72 [41 Cal.Rptr.2d 404]; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].) We exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].)

### 2. *Facial and As-applied Challenges*

■ Sturgeon contends SO40 violates the supremacy clause because it is impermissible under section 1373. A constitutional challenge to a statute, ordinance or policy may be facial or as-applied. "A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual. [Citation.] ' "To support a determination of facial unconstitutionality, voiding the statute as a whole, [those challenging the statute or ordinance] cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . . Rather, [the challengers] must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." ' " (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145]; see *American Civil Rights Foundation v. Berkeley Unified School Dist.* (2009) 172 Cal.App.4th 207, 216 [90 Cal.Rptr.3d 789].) Under a facial challenge, the fact that the statute " 'might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid . . . .' " (*Sanchez v. City of Modesto* (2006) 145 Cal.App.4th 660, 679 [51 Cal.Rptr.3d 821].)

■ "An as[-]applied challenge may seek (1) relief from a specific application of a facially valid statute or ordinance to an individual or class of

individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied, or (2) an injunction against future application of the statute or ordinance in the allegedly impermissible manner it is shown to have been applied in the past. It contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right." (*Tobe v. City of Santa Ana, supra*, 9 Cal.4th at p. 1084.) "If a plaintiff seeks to enjoin future, allegedly impermissible, types of applications of a facially valid statute or ordinance, the plaintiff must demonstrate that such application is occurring or has occurred in the past." (*Ibid.*)

■ On appeal, Sturgeon argues that the facial/as-applied distinction applies only to challenges to statutes and ordinances, not policies or practices. Sturgeon fails to cite any authority which has held that this distinction does not apply to policies or practices.[12] Instead, he bases his argument on the premise that statutes and ordinances are accorded a presumption of validity which does not apply to mere policies or practices, and he notes the existence of several cases in which policies or practices were challenged without the court determining whether the challenge was facial or as-applied. (E.g., *White v. Davis* (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222].) We are not persuaded. When a duly authorized policy is challenged as unconstitutional, recent authority has, in fact, considered whether the challenge is facial, and has accorded the policy the same deference accorded a facially challenged statute or regulation. (*American Civil Rights Foundation v. Berkeley Unified School Dist., supra*, 172 Cal.App.4th at p. 216 [under a facial challenge to a school board's student assignment policy, the challenger must establish that no set of circumstances exists under which the policy would be valid].)

---

[12] Sturgeon relies on *Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 260 [5 Cal.Rptr.2d 545, 825 P.2d 438], which was considering the constitutionality of a statute and presumed the validity of the statute and resolved all doubts in its favor. The Supreme Court distinguished *Hartzell v. Connell* (1984) 35 Cal.3d 899 [201 Cal.Rptr. 601, 679 P.2d 35], a case which had considered the propriety of "fees that were imposed by a school district, *which the district had not been authorized by law to impose.*" (*Arcadia Unified School Dist. v. State Dept. of Education, supra*, 2 Cal.4th at p. 260, fn. 7.) This was clearly not a statement that policies are not entitled to the same deference as that granted to statutes, but only a statement that policies enacted *in violation of regulations* are not entitled to such deference. Here, Sturgeon does not dispute that the board of police commissioners is authorized by the city charter to set policy for the LAPD and that SO40 was properly adopted by the commissioners and incorporated into the LAPD Manual. There is no suggestion that SO40 violates any applicable regulation or state statute, outside of Penal Code section 834b (discussed below).

██ We therefore consider whether Sturgeon's challenge to SO40 is facial or as applied. Indisputably, it is facial only. An as-applied challenge depends on the existence of previous, or current, instances of unconstitutional applications. Sturgeon relies on *no* applications of SO40. He cites to no instances in which an officer was disciplined for violating SO40, and even asserted that the discovery of such instances would be "inappropriate to the type of lawsuit" he brought. Nor can Sturgeon identify an instance in which an officer wanted to contact ICE or question an individual regarding immigration but failed to do so because of a belief that such contact or inquiry would be barred by SO40. In the absence of any specific applications of the policy, Sturgeon's challenge is necessarily facial only.

Sturgeon suggests that he has presented evidence of the way SO40 is applied by means of the deposition testimony of high-ranking LAPD officers as to their opinions of the meaning of SO40. We disagree. There is no evidence that the deposition testimony of these officers was anything more than their opinions of how SO40 might be applied in hypothetical situations. There was no evidence that these officers ever (1) actually applied SO40 in the manner to which they testified; (2) disciplined a subordinate for violating their interpretation of SO40; or even (3) directed subordinates to act in accordance with their interpretation of SO40.

The most persuasive evidence Sturgeon has of the way in which SO40 is applied is defendants' interrogatory answer that "[SO40] prohibits LAPD from initiating police action with the objective of discovering the alien status of a person. If an individual were to contact [ICE] for that explicit purpose and for no other, they would be violating [SO40]." Yet this language, too, is couched in hypothetical language beginning, "If an individual were to contact [ICE] . . . ." There is no evidence that an LAPD officer ever *wanted* to voluntarily contact ICE for these purposes, but was deterred from doing so by SO40. With no evidence that officers actually *were* prohibited from voluntarily contacting ICE for the sole purpose of discovering immigration status, Sturgeon's challenge to SO40's constitutionality cannot be characterized as an as-applied challenge.

### 3. *SO40 Survives a Facial Challenge*

To succeed at his facial challenge, Sturgeon must establish that SO40's provisions *inevitably* pose a present total and fatal conflict with section 1373; a mere hypothetical conflict is insufficient.

██ "In interpreting a statute, we apply the usual rules of statutory construction. 'We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] . . . To determine intent, " 'The

court turns first to the words themselves for the answer.' " [Citations.] "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . ." ' [Citation.] We give the language of the statute its 'usual, ordinary import and accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided.' " (*Kane v. Hurley* (1994) 30 Cal.App.4th 859, 862 [35 Cal.Rptr.2d 809].)

The text of SO40 provides: "Officers shall not initiate police action where the objective is to discover the alien status of a person. Officers shall neither arrest nor book persons for violation of Title 8, Section 1325 of the United States Immigration Code (Illegal Entry)." The text of section 1373(a) states: "Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [ICE] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." Consideration of both of these provisions demonstrates that there is no total and fatal conflict.[13]

■ SO40 does not address communication with ICE; it addresses only the initiation of police action and arrests for illegal entry. Section 1373(a) does not address the initiation of police action or arrests for illegal entry; it addresses only communication with ICE. Sturgeon argues a total and fatal conflict exists, because the language of section 1373(a) which prohibits local entities from "in any way restrict[ing]" the *sending* of information to ICE should be read to strike down local prohibitions on *obtaining information* that might later be sent to ICE. We disagree. Section 1373(b) prohibits local entities from restricting government entities from *maintaining* immigration information and *exchanging* such information with any other entity. Clearly, if Congress had wanted to prohibit restrictions on local entities *obtaining* such information, it could have expressly so legislated. Moreover, if "in any way restrict[ing]" communication with ICE is read to include *obtaining information* to give ICE, there would be no need for section 1373(b) to specifically permit local entities to maintain immigration information and exchange it with other governmental entities as, clearly, maintaining such information and obtaining it from other governmental entities makes the information available to be transmitted to ICE. In short, Sturgeon's strained

---

[13] Our function as a court is not to conceive of every possible scenario in which the enforcement of SO40 may occur and determine whether, and under what circumstances, such enforcement would conflict with section 1373. In the absence of any evidence regarding situations in which SO40 *has been applied*, Sturgeon's challenge is defeated by the determination that SO40 can, in fact, be applied in a constitutional manner.

interpretation of section 1373 finds no support in the language of the statute, and, in fact, would render provisions of the statute nugatory. We therefore reject it.

### 4. SO40 Is Not Preempted

Sturgeon next argues that even if SO40 is not unconstitutionally invalid because of a conflict with section 1373, SO40 is preempted by section 1373. Sturgeon does not argue that SO40 is preempted by any other federal law or federal immigration legislation generally. He simply argues that the perceived overlap between SO40 and section 1373 results in the latter preempting the former. Recharacterizing his argument as sounding in preemption is of little advantage to Sturgeon, for the result is the same. We will not strike down SO40 as preempted when there exists only the hypothetical possibility that it may be applied contrary to the terms of section 1373.

 "There is ordinarily a 'strong presumption' against preemption. [Citations.] 'Consideration of issues arising under the [s]upremacy [c]lause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress." [Citation.] Accordingly, " '[t]he purpose of Congress is the ultimate touchstone' " of pre-emption analysis. [Citation.]' [Citation.] However, when the state regulates in an area where there has been a history of significant federal presence the ' "assumption" of nonpre-emption is not triggered . . . .' [Citation.]" (*Fonseca v. Fong, supra,* 167 Cal.App.4th at p. 930.)

 The power to regulate immigration is unquestionably exclusively a federal power. (*Fonseca v. Fong, supra,* 167 Cal.App.4th at p. 930.) However, it does not follow that all state regulations touching on aliens are preempted. "Only if the state statute is in fact a 'regulation of immigration,' i.e., 'a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain' [citation], is preemption structural and automatic. Otherwise, the usual rules of statutory preemption analysis apply; state law will be displaced only when affirmative congressional action compels the conclusion it must be." (*In re Jose C.* (2009) 45 Cal.4th 534, 550 [87 Cal.Rptr.3d 674, 198 P.3d 1087].) As SO40 is a regulation of police conduct and not a regulation of immigration, there is no structural preemption and the assumption of nonpreemption applies.

 Sturgeon contends SO40 is preempted by federal law, as it conflicts with the intent of Congress in enacting section 1373 and stands as an obstacle

to the accomplishment of that intention.[14] Obstacle preemption arises when a state statute or regulation " ' " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " ' " (*In re Jose C., supra*, 45 Cal.4th at p. 551.) It cannot seriously be disputed that Congress's objective in enacting section 1373 was to eliminate any restrictions on the voluntary flow of immigration information between state and local officials and ICE; indeed, the express language of section 1373 does just that. Nonetheless, we do not conclude SO40 is preempted for the same reason we did not conclude that it was unconstitutional: as a general rule, enforcement of SO40 *has no effect* on the voluntary flow of immigration information between LAPD officers and ICE. SO40 addresses only the initiation of investigations (and a prohibition on misdemeanor arrests); it does not, by its terms, restrict LAPD officers from voluntarily contacting ICE. Without any indication that SO40 is actually interpreted to conflict with section 1373, we will not find preemption based only on a hypothetical situation. (*Solorzano v. Superior Court* (1992) 10 Cal.App.4th 1135, 1148 [13 Cal.Rptr.2d 161] [stating "mere speculation about a hypothetical conflict is not the stuff of which preemption is made"].)

### 5. *Penal Code 834b Creates No Bar to SO40, As It Is Preempted*

Sturgeon's final argument is that SO40 violates Penal Code section 834b. That Penal Code section was enacted by Proposition 187, and governs law enforcement cooperation with ICE. It provides that every law enforcement

---

[14] The California Supreme Court has recognized four types of preemption: express, conflict, obstacle, and field. (*In re Jose C., supra*, 45 Cal.4th at p. 550.) Other courts have distilled only three types of preemption (express, field, and obstacle) from the United States Supreme Court's opinion in *De Canas v. Bica* (1976) 424 U.S. 351 [47 L.Ed.2d 43, 96 S.Ct. 933]. (E.g., *Fonseca v. Fong, supra*, 167 Cal.App.4th at p. 931.) Sturgeon states that he is relying on the second two types of *De Canas* preemption, which would be field and obstacle preemption. However, his analysis of the second *De Canas* type of preemption does not discuss "field" preemption, which is " ' "where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." ' " (*In re Jose C., supra*, 45 Cal.4th at p. 551.) Instead, he argues that the second *De Canas* test is violated by SO40 because 1373 "constitute[s an] unmistakable federal mandate[] requiring the free flow of information regarding persons' immigration status." This appears to be a misunderstanding of field preemption. While field preemption can occur if Congress has unmistakably ordained that state regulation in the field cannot coexist with federal regulation (*Fonseca v. Fong, supra*, 167 Cal.App.4th at p. 931), this requirement focuses on Congress's intent *to exclusively occupy the field*. Sturgeon quotes out of context language regarding congressional intent and uses it to argue that a state regulation is preempted if it conflicts with Congress's intent *in enacting a particular federal statute*, even if it does not conflict with the statute itself. This is not the test for field preemption and, if anything, is a restatement of Sturgeon's obstacle preemption argument. While Sturgeon claims to be making two preemption arguments, he is really making one: SO40 is preempted by the express language of section 1373, and compliance with SO40 therefore creates an obstacle to compliance with section 1373.

agency in California "shall fully cooperate" with ICE "regarding any person who is arrested if he or she is suspected of being present in the United States in violation of federal immigration laws." (Pen. Code, § 834b, subd. (a).) With respect to any such person, the statute requires that law enforcement "[a]ttempt to verify the legal status of such person" as a citizen, lawful permanent resident, lawful temporary resident, or alien present in violation of immigration laws. (Pen. Code, § 834b, subd. (b)(1).) If it appears that the person falls into the latter category, law enforcement is required to notify the person of his or her apparent illegal status "and inform him or her that, apart from any criminal justice proceedings, he or she must either obtain legal status or leave the United States." (Pen. Code, § 834b, subd. (b)(2).) Law enforcement is also required to notify the California Attorney General and ICE of the apparent illegal status of the arrestee. (Pen. Code, § 834b, subd. (b)(3).) Penal Code section 834b, subdivision (c) expressly provides: "Any legislative, administrative, or other action by a city, county, or other legally authorized local governmental entity with jurisdictional boundaries, or by a law enforcement agency, to prevent or limit the cooperation required by subdivision (a) is expressly prohibited."

 In 1995, shortly after the voters adopted Proposition 187, the United States District Court for the Central District of California concluded that Penal Code section 834b, in its entirety, was preempted as an impermissible regulation of immigration.[15] (*League of United Latin American Citizens v. Wilson, supra,* 908 F.Supp. at p. 771.) This conclusion has been acknowledged in California courts. (*Fonseca v. Fong, supra,* 167 Cal.App.4th 922, 933–935.)

 The district court's opinion that Penal Code section 834b was preempted predated Congress's 1996 enactment of section 1373. Sturgeon argues that section 1373 undermines the district court's finding of preemption, because section 1373 encourages cooperation between local police and ICE.[16] We disagree. "[A] state law invading an area reserved exclusively to the federal government under the Constitution cannot be saved by a congressional enactment." (*Fonseca v. Fong, supra,* 167 Cal.App.4th at p. 928, fn. 7.) Penal Code section 834b was preempted as an impermissible regulation of

---

[15] The district court found it to be preempted under field and obstacle preemption as well. (*League of United Latin American Citizens v. Wilson* (C.D.Cal. 1995) 908 F.Supp. 755, 777.)

[16] Shortly after the enactment of 8 United States Code section 1644, which provides that no state or local *entity* may be prohibited or restricted from exchanging information with ICE, the defendants in *League of United Latin American Citizens v. Wilson* returned to district court, seeking reconsideration of the preemption ruling in light of 8 United States Code section 1644. In an unpublished opinion, the court denied reconsideration. (See *League of United Latin American Citizens v. Wilson* (C.D.Cal. 1997) 997 F.Supp. 1244, 1252.)

immigration; an intervening congressional enactment cannot save it. As Penal Code section 834b is preempted by federal law, any perceived conflict with SO40 is irrelevant.

## *DISPOSITION*

The judgment is affirmed. Defendants and interveners shall recover their costs on appeal.

Klein, P. J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 9, 2009, S175011.