Filed 9/4/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CITY OF RANCHO PALOS VERDES et al., | B332315 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22STCP02369) |
| v. | |
| STATE OF CALIFORNIA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Micthell L. Beckloff, Judge.  Affirmed.

Aleshire & Wynder, Sunny K. Soltani, Pam K. Lee, Michelle L. Villarreal, and Shukan A. Patel for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Mark R. Beckington, Christopher J. Kissel, Deputy Attorneys General, for Defendants and Respondents.

In 2021, the Legislature enacted, and the governor approved Senate Bill No. 9 (Stats. 2021, ch. 162, § 1) (SB 9) to "ensur[e] access to affordable housing." SB 9 amended the Government Code to require local agencies to ministerially approve both the development of two-unit housing projects within single-family residential zones and the subdivision of single-family urban lots into two roughly equal lots. SB 9 thus allows the construction of up to four housing units on urban lots previously zoned for one single-family residence, and restricts the ability of local agencies to limit such development.

General law cities Rancho Palos Verdes, Lakewood, Paramount, and Simi Valley (collectively appellants) filed a verified complaint and petition for writ of mandate challenging the constitutionality of SB 9. Appellants alleged that SB 9 violates the California Constitution because it "usurps a city's authority over its own municipal affairs," replacing "local land use and zoning control" with a "one-size-fits all approach throughout the State, notwithstanding each community's varying needs and unique natural and physical environment." Appellants further alleged that SB 9 is not reasonably related to its stated goal of ensuring access to affordable housing, because it does not require the subdivided lots or additional housing units to meet any affordability standards.

Respondents Rob Bonta, in his official capacity as Attorney General of California, and the State of California (collectively respondents) moved for judgment on the pleadings and filed a demurrer. After briefing and a hearing, the trial court entered judgment for respondents. It concluded that, as general law cities, appellants could not invoke the municipal affairs doctrine

2

or state a claim under article XI, section 5 of the California Constitution.  The court further concluded that appellants had not demonstrated a reasonable likelihood that their complaint could be amended to state a viable cause of action.

Appellants now contend the trial court erred in granting judgment for respondents, because their claims were not amenable to resolution on the pleadings and they alleged sufficient facts to establish an as-applied challenge to SB 9.  They further contend they should have been granted leave to amend, because they can plead that SB 9 bears no reasonable relationship to its stated purpose and plead additional facts related to the "distinctive challenges" SB 9 poses for each of them.  We grant appellants' request for judicial notice of a trial court judgment in another case challenging SB 9, and deny their request for judicial notice of a recent executive order temporarily suspending application of SB 9 in areas recently affected by wildfires.  We reject their substantive contentions, and affirm the judgment.

## BACKGROUND

### I.    SB 9

Signed into law in 2021 and effective January 1, 2022, SB 9 made several changes to the Government Code for the stated purpose of "ensuring access to affordable housing."  As most relevant here, it added Government Code section 65852.21, which provides[1] that a "proposed housing development containing no

---

[1]    For purposes of this appeal, we consider the provisions as enacted by SB 9.  They—and SB 9—have subsequently been amended at least once.  (See Sen. Bill No. 450 (Reg. Sess. 2023-2024).)

3

more than two residential units within a single-family residential zone shall be considered ministerially, without discretionary review or a hearing," if it meets certain requirements. (Gov. Code, § 65852.21, subd. (a).) SB 9 also added Government Code section 66411.7, which provides that a local agency—defined in Government Code section 65852.21, subdivision (i)(3) as "a city, county, or city and county, whether general law or chartered"—"shall ministerially approve . . . a parcel map for an urban lot split" meeting certain conditions, including location "within a single-family residential zone," and "approximately equal lot area" of the resulting parcels, each of which must be at least 1,200 square feet. (Gov. Code, § 66411.7, subds. (a)(1), (2)(A), (3)(A).) Both sections limit local agencies to the imposition of "objective zoning standards, objective subdivision standards, and objective design review standards" that "involve no personal or subjective judgment by a public official and are uniformly verifiable by reference to an external and uniform benchmark or criterion available and knowable by both the development applicant or proponent and the public official prior to submittal." (Gov. Code, §§ 65852.21, subds. (b)(1), (i)(2), 66411.7, subds. (c)(1)-(2), (m)(1). The parties agree that the overall effect of these provisions is that "an urban lot restricted by zoning to a lone single-family dwelling may be transitioned, without discretionary review, to two lots with two housing units each."

In enacting SB 9, the Legislature made the following finding and declaration: "The Legislature finds and declares that ensuring access to affordable housing is a matter of statewide concern and not a municipal affair as that term is used in Section 5 of Article XI of the California Constitution. Therefore, Sections 1 and 2 of this act adding Sections 65852.21 and 66411.7 to the

4

Government Code and Section 3 of this act amending Section 66452.6 of the Government Code apply to all cities, including charter cities." Article XI, section 5 of the California Constitution provides charter cities with the authority to "make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters."

## II.  Appellants' Allegations

In June 2022, appellants Rancho Palos Verdes and Lakewood filed a verified petition for writ of mandate and complaint for declaratory and injunctive relief against respondents. After respondents answered the complaint and moved for judgment on the pleadings, the trial court granted appellants leave to amend to add Paramount and Simi Valley as additional petitioners and plaintiffs. The substantive allegations of the amended complaint, filed in May 2023, were largely unchanged.

Appellants alleged that they are general law cities and municipal corporations duly organized under California state law. Rancho Palos Verdes is "fully built out," primarily with "single family detached homes," though it also includes "a few multi-family structures" and "few commercial centers." Much of the city lies within a very high fire hazard severity zone and faces significant wildfire hazards. Lakewood is also "built out," with a population of approximately 80,000, approximately 65 percent of whom are minorities. Lakewood "currently has adequate infrastructure in water, sewer, and other utilities and resources to accommodate existing development," but "projected housing needs will necessitate significant land-use changes and expanded capacity." Paramount is a "fully developed" city that "operates its

5

own water, wastewater, and storm drain systems" for its residents, approximately 93 percent of whom are minorities. Its average household size exceeds the average household size in Los Angeles County. Paramount "meticulously monitors its infrastructure's capacity to support new development," reviewing "applications for new projects on a case-by-case basis." Simi Valley "experienced tremendous population growth" between 1970 and 2020. "Water is relatively scarce," though its water agencies have determined that "adequate water supply is available to serve the buildout of the population as envisioned under the General Plan." Simi Valley "has many steep slopes and hillsides, where the City restricts the maximum number of residential dwellings per acre for safety purposes." It is also home to four dams, which "have the potential to result in significant flooding impacts in the City."

"Throughout the legislative process prior to SB 9's passage," all four appellants commented on and opposed the legislation. They alleged that they and other cities throughout the state "have already established residential land use and zoning regulations with respect to the densities, types, locations, and standards for housing developments, and such regulations have been found to be municipal affairs, as guaranteed under Article XI, Section 5 of the California Constitution." They further alleged that SB 9 "eviscerated a city's local control over land use decisions and a community-tailored zoning process" and "usurps a city's authority over its own municipal affairs" in at least five ways.

First, they alleged that SB 9 is "overbroad" and intrudes on a "city's authority to regulate for the public health, safety, and welfare of its community," because it "does not allow a city to

6

adequately address public health or safety concerns of the cumulative impacts of multiple SB 9 housing projects in a neighborhood or community," including impacts on parking, local schools, air pollution, utilities, water and sewer system usage, and the availability of parks and open space.  Second, they alleged that Rancho Palos Verdes "is uniquely constrained" by its location in a fire hazard zone, and additional housing and population density could clog narrow streets and impede emergency accessibility.  Third, they alleged SB 9 will cause city housing elements to "become outdated and inaccurate by failing to adequately account for certain population increases, housing supply and demand, infrastructure needs, parks, emergency services, and other related service levels," and will cause "strain" to infrastructure and services "without adequate planning and control to address the resulting impacts."  Fourth, they alleged that an exemption in SB 9 for areas subject to the California Coastal Act will "disproportionately gentrify[ ] parts of a community" not located in areas covered by the Coastal Act. Fifth, they alleged SB 9 "is non-democratic" because it "removes any public engagement and review of land use decisions that affect neighboring homeowners by requiring a ministerial approval process."

Appellants further alleged that SB 9 "is not reasonably related" to its stated goal of ensuring access to affordable housing.  They alleged that because the bill did not contain any affordability restrictions, "[a]ny and all new housing and lot splits under SB 9 can be sold or leased at market rates." Thus, due to high land and construction costs, "it is unlikely that most of the new housing created under SB 9 will be financially affordable to moderate- or lower-income households."  Instead,

7

they alleged, "SB 9 will exacerbate unaffordability by taking away potential affordable housing locations." They alleged the problem could be particularly acute in "communities of color, in areas where land is relatively cheaper," because developers could "demolish houses to build high-cost rentals that would limit the ability of minorities to build wealth, exacerbating inequalities and promoting gentrification." Appellants sought a writ of mandate invalidating SB 9, a declaration that the legislation is unconstitutional, and an injunction preventing respondents from enforcing it.

## III. Motion for Judgment on the Pleadings and Demurrer

Respondents moved for judgment on the pleadings with respect to the initial complaint. After appellants amended the complaint, respondents filed a demurrer.[2] The filings are substantively identical; the demurrer incorporates the arguments raised and authorities cited in the motion for judgment on the pleadings.

Respondents first argued that SB 9 is "a constitutional exercise of the State's police power, because it is rationally

---

[2] In its written order granting appellants leave to amend the complaint, the trial court ruled that "If Respondents wish to amend their motion [for judgment on the pleadings] to include the City of Paramount and the City of Simi Valley or set a demurrer to be heard when the judgment on the pleadings is heard, the court will accommodate Respondents with a continued hearing date on their motion." Respondents elected to file a demurrer to the amended complaint, incorporating their arguments from their motion for judgment on the pleadings. The parties and court proceeded to treat the motion for judgment on the pleadings and demurrer essentially as a unitary motion.

8

related to the legitimate government purpose of mitigating the ongoing affordable housing crisis in California." They cited case law noting that California has a severe shortage of affordable housing, and holding that assisting moderate-income households with their housing needs is a legitimate government purpose. Respondents also pointed to the statement of purpose in SB 9, and contended that "allowing the development of additional housing units can be reasonably expected to decrease housing costs, or at least slow their rise, by increasing the aggregate supply of housing." They further asserted that it was "entirely rational for the Legislature to conclude that by requiring local governments to approve relevant housing projects ministerially, potential barriers to affordable housing development would be mitigated and the development of additional housing in California would be encouraged, contributing to both an increase in available housing and a decrease in overall housing costs statewide." Respondents argued that appellants' factual allegations did not "undermine the Legislature's rational basis" for enacting SB 9, and instead "are more properly understood as disagreements over the wisdom and potential efficacy of SB 9, which are insufficient to sustain a rational basis challenge."

Respondents also argued that because SB 9 is a constitutional means of addressing the valid statewide issue of affordable housing, it preempts local ordinances to the contrary. They recognized that the municipal affairs doctrine grounded in article XI, section 5 of the state constitution provides "a limited exception to the general constitutional rule that state law prevails over conflicting local ordinances." However, they argued that exception is available only to charter cities, and appellants, as general law cities, could not properly invoke it.

Appellants opposed the motion for judgment on the pleadings and demurrer. Characterizing their challenge to SB 9 as "facial," appellants contended that rational basis review did not apply, because their challenge was "not premised on the due process or equal protection clauses of the Fourteenth Amendment." Appellants urged the court to find that their local police power to govern their municipal affairs, derived from article XI, section 7 of the California Constitution, "is as broad as that of the State," and SB 9 could not preempt that authority because it was not reasonably related to its stated goal of ensuring access to affordable housing. Appellants requested leave to amend "to remedy any defects" in their complaint.

## IV. Hearing and Ruling

Prior to the June 14, 2023 hearing on the motion for judgment on the pleadings and demurrer, the court issued a written tentative ruling granting the motion and sustaining the demurrer without leave to amend. In the tentative, the court noted appellants' concession that the Legislature "may increase or diminish the powers of a [ ] city at will," and their failure to allege "they are protected by the municipal affairs doctrine." The court found the doctrine inapplicable in any event, because "only 'a charter city's ordinances relating to purely municipal affairs prevail over state laws on the same subject,'" and "Petitioners are general law cities; they are not charter cities." The court rejected appellants' reliance on article XI, section 7 of the California Constitution, which vests police power in all cities, because the scope of that provision is expressly limited to laws that are "not in conflict with general laws." The court accordingly concluded appellants "have not identified (i.e., pled) any total and fatal conflict between SB 9 *and any applicable constitutional provision.*

10

As general law cities, Petitioners are not entitled to the deference afforded charter cities under the municipal affairs doctrine." For "completeness," the court further considered and rejected appellants' contention that SB 9 was not reasonably related to it stated goal.

At the hearing, appellants confirmed that article XI, section 7 was "the only constitutional provision" on which they were relying, and acknowledged that provision requires municipal laws to give way to conflicting state law. They argued that the state law "still has to be reasonably related to what the Legislature's stated intent is" to pass constitutional muster. Appellants argued that they adequately alleged "this facial challenge to the statute, because, as worded, there is no affordability provision or language within the statute itself."

In response, respondents maintained that the law should be reviewed under the deferential rational basis standard and argued that courts "should not invalidate a legislative act even when the wisdom of the statutory provision is debatable as a matter of policy." Respondents also pointed to legislative materials that were the subject of an unopposed request for judicial notice, arguing those materials showed the Legislature also intended to address "housing opportunities more generally," as well as the "mismatch" between housing supply and demand.

In reply, appellants argued that the legislative materials were "one-sided" and did not "reference what the opposition is" to the statute. They requested an evidentiary hearing for the court to consider all the materials. The court rejected that request, reasoning that a conflict in the evidence would "demonstrate a dispute among experts" about "how to achieve the goal," but "would not establish an arbitrary action or a lack of rational

11

relationship." The court orally granted the motion for judgment on the pleadings and sustained the demurrer without leave to amend, adopting its tentative as its final ruling. It subsequently entered judgment in favor of respondents. Appellants timely appealed.

## DISCUSSION

Appellants contend that the court erred by granting the motion for judgment on the pleadings and sustaining the demurrer without leave to amend. We reject these contentions.

## I.     Standard of Review

"'Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend. [Citation.] We assume the truth of the allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law.'" (*United Talent Agency v. Vigilant Insurance Co.* (2022) 77 Cal.App.5th 821, 829.) "'A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.'" (*People ex rel. Harris v. Pan Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.) The decision whether to grant leave to amend a complaint is a discretionary one for the trial court. An appellant may demonstrate an abuse of that discretion by showing there is a reasonable possibility any defect in the complaint can be cured by amendment. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.)

## II.     Analysis

Our analysis begins and largely ends with appellants' status as general law cities. "The Government Code classifies cities as either 'general law cities' (cities organized under the

general law of California) or 'chartered cities' (cities organized under a charter)." (*G.L. Mezzetta, Inc. v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1092 (citing Gov. Code, §§ 34100, 34101, 34102) (*G.L. Mezzetta*); see also *State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th 547, 553, fn. 1 (*City of Vista*).) Both types of cities are governed by article XI, section 7 of the California Constitution, which vests them with the power to "make and enforce within [their] limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Under this provision, cities "have plenary authority to govern, subject only to the limitation that they exercise this power within their territorial limits and subordinate to state law." (*Candid Enterprises, Inc. v. Grossmont Union High School District* (1985) 39 Cal.3d 878, 885.) That plenary authority historically extends to land use regulation, which is considered an exercise of the police power granted under article XI, section 7. (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 742.) However, even when a general law city "'regulates in an area over which it traditionally has exercised control, such as the location of particular land uses," any "local legislation that conflicts with state law is void." (*Id.* at p. 743.)

A charter city, in contrast, is granted a limited "'exemption, *with respect to its municipal affairs*, from the "conflict with general laws" restrictions of" article XI, section 7." (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897, fn. 1.) This exemption, known as the "home rule" or municipal affairs doctrine (see *City of Vista, supra*, 54 Cal.4th at pp. 556-557), derives from article XI, section 5, which permits charter

13

cities to "make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters." (Cal. Const., art. XI, § 5(a).) Thus, a charter city may enact legislation contrary to state law unless the conflicting state law governs a matter of statewide concern, is reasonably related to resolution of that concern, and is narrowly tailored to avoid unnecessary interference in local governance. (See *City of Vista*, *supra*, 54 Cal.4th at p. 556; see also *AIDS Healthcare Foundation v. Bonta* (2024) 101 Cal.App.5th 73, 82 ["a state law supersedes an ordinance enacted by a charter city as to 'municipal affairs' only if the two conflict *and* (1) 'the subject matter of the [state] law is of statewide' or 'regional' 'concern' . . . and (2) the state law 'is reasonably related to [the] resolution' of that concern"].)

Appellants assert that SB 9 impermissibly "eliminates a local authority's local control over land use decisions, including the authority to create single-family zoning districts and approve housing developments, a unique municipal right which had existed for nearly a century." They characterize the instant suit as "an attempt to curtail the State's illegal overreach into municipal affairs." However, "[i]n the absence of some constitutional restraint, the Legislature may increase or diminish the powers" of a general law city "at will." (*Williams v. City of San Carlos* (1965) 233 Cal.App.2d 290, 295.) Only charter cities are protected by the municipal affairs doctrine. Indeed, appellants concede that "[a]s general law cities, [they] are not entitled to the deference afforded charter cities under the municipal affairs doctrine, and SB 9 preempts any local enactments in conflict with it." Respondents correctly assert "[t]hat definitively ends the Cities' case." When the local law of a

14

general law city conflicts with state law, the local law must give way.

Appellants nevertheless contend they can "challenge the application of the law on each of them and its lack of reasonable relationship to affordable housing." They assert that "[a]lthough the Cities are general law cities, the state's laws must still pass constitutional muster before they preempt local laws." They argue that SB 9 is "invalid and unconstitutional because it does not bear a reasonable and substantial relationship to its stated goal of creating and ensuring access to affordable housing." However, as the trial court noted below, appellants' briefing fails to identify any constitutional provision the Legislature allegedly has violated.[3] As appellants acknowledged below, they may not challenge state actions as violative of their federal due process, equal protection, or contract rights. (See *Star-Kist Foods, Inc. v. County of Los Angeles* (1986) 42 Cal.3d 1, 6.)

The language appellants use throughout their brief— namely that SB 9 "does not bear a reasonable and substantial relationship to its stated goal"—suggests an attempt to rely on the municipal affairs doctrine grounded in article XI, section 5 of the California Constitution. So too does their request for judicial notice of the trial court's judgment in *City of Redondo Beach v. Bonta*, LASC No. 22SCTCP01143, a suit they assert challenged "the validity of SB 9 *as applied to charter cities*." We grant

---

[3] During oral argument, appellants' counsel represented that appellants' position is that SB 9 violates article XI, section 7. Counsel also acknowledged, however, that they have not located any case law holding that a general law city may argue that a state law is unconstitutional under article XI, section 7. This court likewise has not located any such authority.

appellants' unopposed request for judicial notice (see Evid. Code, §§ 452, subd. (d), 459, subd. (a)), though we remind appellants that "[t]aking judicial notice of a document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning." (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374.) Regardless of the ultimate correctness of that ruling, a question separately pending on appeal (No. B338990) and not considered here, the municipal affairs doctrine is not applicable to this case involving general law cities.

Appellants also suggest that the Legislature overstepped its own police power by enacting SB 9. Citing *Serve Yourself Gasoline Stations Association v. Brock* (1952) 39 Cal.2d 813, 817-818 (*Serve Yourself*), they assert, "In reviewing police power legislation, such as SB 9, the court must determine: (1) whether the subject of the legislation is within the State's power; and (2) if so, whether the means adopted to accomplish the result ***are reasonably designed for that purpose and have a real and substantial relation to the objects sought to be attained***." *Serve Yourself* does not assist appellants. There, appellant gas stations argued that statutes regulating price advertising on or near gas stations violated their due process rights and former "article IV, section 25, subdivision 33 of the California Constitution in that they constitute a special law that is unnecessary because a general law . . . is and can be made applicable." (*Serve Yourself, supra*, 39 Cal.3d at p. 816.) As noted above, appellants may not assert a due process challenge, and there is no suggestion here that SB 9 is unnecessary due to the existence of a more generally applicable law. Moreover, *Serve Yourself* states that "it must be presumed at the outset that the

Legislature acted within its powers," and the "burden is upon those attacking to the statute to make a showing that the statute is unconstitutional." (*Id.* at p. 818; see also *AIDS Healthcare Foundation v. Bonta, supra*, 101 Cal.App.5th at p. 81 ["We presume that statutes are constitutional, and a party attacking the constitutional validity of a statute bears the burden of overcoming that presumption by ""clearly, positively, and unmistakably"" demonstrating the invalidity of the statute."].) Appellants have not met that burden; the only constitutional provisions they cite are article XI, sections 5 and 7. They also have not shown that this case, which poses questions of law, presents an exception to the general rule that constitutional challenges may be resolved at the pleading stage. (See *Coffman Specialties, Inc. v. Dept. of Transportation* (2009) 176 Cal.App.4th 1135, 1144; *Alfaro v. Terhune* (2002) 98 Cal.App.4th 492, 509-510.)

Appellants contend that they can remedy these defects by amending their complaint to allege an as-applied challenge and pleading more specific facts related to the application of SB 9 to each of them. The trial court did not abuse its discretion in denying leave to amend. As appellants recognize, an as-applied challenge "'contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and . . . consider[s] whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right.'" (*Sturgeon v. Bratton* (2009) 174 Cal.App.4th 1407, 1419.) However, appellants have not demonstrated the existence of any protected right here; as general law cities, they cannot invoke the municipal affairs doctrine to challenge state laws contrary to

17

their own ordinances.  Further, the additional allegations they propose adding to an amended complaint are not materially different from those included in the operative complaint.  For instance, they assert that increased street parking and congestion in Rancho Palos Verdes "poses difficulties for quickly evacuating residents and entering fire trucks and emergency responders," while Lakewood faces "single family residences [with] 3 times as many trash bins outside of their house on the curb, which has exacerbated parking issues," and Simi Valley's "already strained water system" will face additional challenges if more housing is added pursuant to SB 9.  Their request for judicial notice of a recent executive order suspending SB 9 in areas affected by the Palisades and Eaton fires due to similar concerns is denied as irrelevant.  (See, e.g., *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748 & fn. 6 [judicial notice warranted when materials are "necessary, helpful, or relevant"].)

Appellants contend that SB 9 precludes them from addressing these legitimate concerns, but have not identified a nexus between that preclusion and any constitutional violation.  "Regardless of how plaintiffs phrase their claim, their complaint boils down to a contention that the Act is unconstitutional as written.  They have not alleged specific facts to show that a facially valid enactment is being, or has been applied in a constitutionally impermissible manner." (*Alfaro v. Terhune, supra*, 98 Cal.App.4th at p. 510.)  They accordingly have failed to demonstrate any reasonable possibility that the complaint can be amended to state a viable as-applied claim.  (See *City of Torrance v. Southern California Edison Co.* (2021) 61 Cal.App.5th 1071, 1091.)

## DISPOSITION

The judgment is affirmed.  Respondents may recover their costs of appeal.

## CERTIFIED FOR PUBLICATION


COLLINS, ACTING P. J.


We concur:


MORI, J.


TAMZARIAN, J.